ACCEPTED
03-15-00506-CV
8341468
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/22/2015 11:57:23 AM
JEFFREY D. KYLE
CLERK

**No. 03-15-00506-CV**

IN THE COURT OF APPEALS
FOR THE THIRD COURT OF APPEALS DISTRICT OF TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/22/2015 11:57:23 AM
JEFFREY D. KYLE
Clerk

# EUGENE MILES PRENTICE, RICHARD M. SPAZIANO, and CARL WILLIAM POLLOCK,

*Appellants,*

vs.

## FROST BANK,

*Appellees.*

On appeal from the 200th District Court of Travis County, Texas
Docket No. D-1-GN-13-000711

# APPELLANTS' BRIEF

PENDERGRAFT & SIMON, L.L.P.
Robert L. Pendergraft
Texas Bar No. 15743500
William P. Haddock
Texas Bar No. 00793875
2777 Allen Parkway, Suite 800
Houston, TX 77019
Tel. 713-528-8555
Fax. 713-868-1267

*Counsel for Eugene Miles Prentice &
Richard M. Spaziano*

CARL WILLIAM POLLOCK
1200 Barton Creek Blvd. #3
Austin, TX 78735
Tel. 512-656-6374

*Appellant, Pro Se*

**ORAL ARGUMENT REQUESTED**

# Identity of Parties & Counsel

| Appellants: | Counsel: |
| --- | --- |
| Eugene Miles Prentice | William P. Haddock<br>Robert L. Pendergraft<br>Pendergraft & Simon, LLP<br>2777 Allen Parkway, Suite 800<br>Houston, TX 77019 |
| Richard M. Spaziano | William P. Haddock<br>Robert L. Pendergraft<br>Pendergraft & Simon, LLP<br>2777 Allen Parkway, Suite 800<br>Houston, TX 77019 |
| Carl William Pollock<br>1200 Barton Creek Blvd. #3<br>Austin, TX 78735 | *Pro se* |

| Appellee: | Counsel: |
| --- | --- |
| Frost Bank | Kendall D. Hamilton<br>Law Office of Ken Hamilton<br>900 RR 620 South<br>Suite C101 #164<br>Austin, TX 78734 |

## Statement Regarding Oral Argument

The Appellant believes an oral argument would aid the Court in determining the legal and factual issues presented in this appeal because:

a.  This case involves legal issues regarding the interpretation of multiple guaranty agreements have not been definitively decided by the Supreme Court of Texas or by this Court.

b.  As described in this brief, the decisional process of this Court may be significantly aided by oral argument.

# Table of Contents

Identity of Parties & Counsel ........................................................................i

Statement Regarding Oral Argument ........................................................ii

Index of Authorities ...................................................................................v

Statement of the Case.................................................................................1

Statement of Jurisdiction...........................................................................2

Issues Presented .........................................................................................3

Statement of Facts ......................................................................................4

    A.  The Underlying Promissory Note & Guaranty
        Agreements.......................................................................................4

    B.  Default & Initial Demands on the Guarantors .................................6

    C.  Settlement with Bruce Ling & Other Payments to Frost
        Bank ..................................................................................................6

    D.  Frost Bank Files Suit Against the Remaining
        Guarantors.......................................................................................7

Summary of the Argument ........................................................................9

Argument...................................................................................................11

I.   The trial court erred in granting a no-evidence summary
    judgment on a claim in which Frost Bank had the burden of
    proof .....................................................................................................12

II.  The trial court erred in granting a traditional summary
    judgment where latent ambiguities required strict
    construction in favor of the Guarantors ............................................14

    A.  Unambiguous language in the Guaranty Agreements
        must be interpreted by its plan language as a matter of
        law.....................................................................................................18

B. Latent ambiguities arising from the reading of the Guaranty Agreements together require construction in the Guarantors' favor ........................................................ 19

C. The Court must resolve ambiguities in the Guaranty Agreements in favor of the Guarantors ............................ 22

III. The trial court erred in denying Appellants' Cross-Motion for Summary Judgment ........................................................ 25

**Conclusion & Prayer** ................................................................ 25

**Certificate of Compliance** ...................................................... 27

**Certificate of Service** ............................................................... 27

**Appendix** ................................................................................... 28

# Index of Authorities

## Cases

*Board of Ins. Comm'rs v. Great S. Life Ins. Co.*,
  239 S.W.2d 803 (Tex. 1951) ..................................................................... 19

*Bromlow v. Pyne Corp.*,
  490 So.2d 1027 (Fla.Dist.Ct.App. 1986) ...................................................... 20

*Coker v. Coker*,
  650 S.W.2d 391 (Tex. 1983) ............................................................ 16, 17, 22

*DeWitt County Elec. Co-op., Inc. v. Parks*,
  1 S.W.3d 96 (Tex. 1999) ....................................................................... 19

*FM Properties Operating Co. v. City of Austin*,
  22 S.W.3d 868 (Tex. 2000) ................................................................. 11, 25

*Gulf Ins. Co. v. Burns Motors, Inc.*,
  22 S.W.3d 417 (Tex. 2000) ..................................................................... 17

*Heritage Res. Inc. v. NationsBank*,
  939 S.W.2d 118 (Tex. 1996) .................................................................... 17

*Hill Mercantile Co. v. Rotan Grocery Co.*,
  127 S.W. 1080 (Tex.Civ.App.—Austin 1910, writ dism'd) ................. 16, 22

*In re Prudential Ins. Co. of America*,
  148 S.W.3d 124 (Tex. 2004) (orig. proceeding) ........................................... 17

*JMW Partners, L.P. v. Northstar Bank of Texas*,
  No. 2-09-167-CV, 2010 WL 2331399 (Tex.App.—Fort Worth
  Jun. 10, 2010, no pet.) (mem. op.) ............................................. 17, 22, 23, 24

*Lear Siegler, Inc. v. Perez*,
  819 S.W.2d 470 (Tex. 1991) .................................................................... 15

*Limestone Products Distrib., Inc. v. McNamara*,
  71 S.W.3d 308 (Tex. 2002) ..................................................................... 14

*Mack Trucks, Inc. v. Tamez*,
  206 S.W.3d 572 (Tex. 2006) .................................................................... 13

*Masterson v. Diocese of Northwest Texas,*
422 S.W.3d 594 (Tex. 2013) ....................................................................11

*McCrea v. Cubilla Condo. Corp. N.V.,*
685 S.W.2d 755 (Tex.App.—Houston [1st Dist.] 1985, writ
ref'd n.r.e.)..............................................................................................11

*National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.,*
907 S.W.2d 517 (Tex. 1995) ....................................................................19

*Nixon v. Mr. Prop. Mgmt. Co.,*
690 S.W.2d 546 (Tex. 1985) ....................................................................14

*Pham v. Mongiello,*
58 S.W.3d 284 (Tex.App.—Austin 2001, pet. denied)..............................15

*Principal Commercial Acceptance, L.L.C. v. Buchanan Fund V,*
L.L.C., No. 01-11-00782-CV, 2012 WL 6095236 (Tex.App.—
Houston [1st Dist.] Dec. 6, 2012, pet. denied) (mem. op.).......................17

*Progressive Cnty. Mut. Ins. Co. v. Kelley,*
284 S.W.3d 805 (Tex. 2009) ....................................................................17

*Rhône-Poulenc, Inc. v. Steel,*
997 S.W.2d 217 (Tex. 1999) ....................................................................14

*Scott v. City of Tampa,*
30 So.2d 300 (Fla. 1947), *cert. denied,* 332 U.S. 790 (1947).........................20

*Sidelnik v. American States Ins. Co.,*
914 S.W.2d 689 (Tex.App.—Austin 1996, writ denied)...........................14

*Smith v. Montgomery,*
3 Tex. 199 (1848) ....................................................................................16

*Stone v. Midland Multifamily Equity REIT,*
334 S.W.3d 371 (Tex.App.—Dallas 2011, no pet.) ..................................15

*Walker v. Harris,*
924 S.W.2d 375 (Tex. 1996) ....................................................................15

*Whitney Nat'l Bank v. Labry,*
No. 09-cv-02518, 2011 WL 1211606 (W.D. Tenn. Mar. 29,
2011) (not designated for publication)..............................................20, 21

## Statutes

Tex. Gov't Code Ann. § 22.220 (West Supp. 2014) ........................................... 2

## Rules

Tex. R. Civ. P. 166a ...................................................................................... 13

TO THE HONORABLE JUSTICES OF THIS COURT:

Eugene Miles Prentice, Richard M. Spaziano, and Carl William Pollock respectfully submit this Appellants' Brief showing the Court why the lower court erred in its interpretation of the law leading to the improper entry of a summary judgment in favor of Frost Bank on its sole cause of action for breach of a guaranty agreement and in denying the Appellants' cross-motions for summary judgment. In support, the Appellants respectfully show:

## Statement of the Case

| | |
|---|---|
| *Nature of the Case* | Frost Bank filed suit against Eugene Miles Prentice, Richard M. Spaziano, and Carl William Pollock for breach of separate, but essentially identical, guaranty agreements guaranteeing 50 percent of the indebtedness owed by National Insurance Partners. (C.R. 3–8). The Appellants answered and pled affirmative defenses. (C.R. 38–39, 195–96). |
| *Trial Court* | While originally assigned to the 126th District Court of Travis County, Texas the final order being appealed was entered by the 200th District Court of Travis County, Texas, the Honorable Giesela D. Triana presiding. |
| *Trial Court Disposition* | After hearing Frost Bank's motion for summary judgment and Appellants' cross-motion for summary judgment, on August 5, 2015, the court entered a final summary judgment finding the Appellants liable under the guaranty agreements and holding each Appellants personally liable for up to $360,471.60 until the total underlying indebtedness is paid. (C.R. 507–09; App. 1). |

1

*Appellate*
*Proceedings*

On August 12, 2015, the Appellants perfected an appeal to this Court. (C.R. 512).

## Statement of Jurisdiction

This Court has jurisdiction over the final, summary judgment pursuant to Tex. Gov't Code Ann. § 22.220(a) (West Supp. 2014).

Following the entry of the final, summary judgment on August 5, 2015, this appeal was perfected on August 12, 2015. (C.R. 512).

# Issues Presented

1.  Whether the trial court erred in granting a no-evidence motion for summary judgment on the basis that the parties defending a plaintiff's cause of action, where the plaintiff had the burden of proof, allegedly did not have more than a scintilla of evidence to defeat the movant's cause of action.

2.  Whether the trial court erred in determining that four, substantially identical guaranty agreements, when read together did not contain a latent ambiguity.

3.  Whether the trial court erred by denying the Appellants' cross-motion for summary judgment asserting that the Appellee could not prevail in its cause of action for breach of a guaranty agreement.

## Statement of Facts

The facts of this case are not in dispute; this case involves legal matters only and the application of law to the undisputed facts.

### A. The Underlying Promissory Note & Guaranty Agreements

In exchange for a loan, National Insurance Partners, Inc. ("*NIP*") executed a promissory note, dated May 22, 2007, in the amount of $1 million. (C.R. 225, 229, 233, 237). On October 16, 2009, a new promissory note payable to Frost Bank, in the amount of $1,292,000, was executed as part of a modification of the original loan agreement. (C.R. 215, 219–21).

As a condition of making the original loan, the bank required guaranty agreements to be made by NIP's principal officer, Appellant, Carl William Pollock, and three other individuals who were neither officers, directors, nor employees of NIP:

1. Bruce W. Ling,
2. Appellant, Eugene Miles Prentice, and
3. Appellant, Richard M. Spaziano.

(C.R. 215).

The guaranty agreements, all of which were dated May 22, 2007, were identical except for the identity of the respective guarantors. (C.R. 215, 223–38). The guaranty agreements provide, in relevant part:

Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of *Guarantor's Share of the Indebtedness* of Borrower to Lender. . . .

If Lender presently holds one or more guarantees, or hereafter receives additional guarantees from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties. . . .

The words "Guarantor's Share of the Indebtedness" . . . mean 50.000% of all of the principal amount, interest thereon to the extent not prohibited by law, and all collection costs, expenses and Lender's reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals. . . .

In all cases where there is more than one . . . Guarantor, *then all words* used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so requires.

(C.R. 223–38) (emphasis added).

The guaranty agreements defined "the Note" as:

[T]he promissory note dated May 22, 2007, in the original principal amount of $1,000,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations, of and substitutions for the promissory note or agreement.

(C.R. 225–26, 229–30, 233–34, 237–38).[1]

---

[1] True and correct copies of the guaranty agreements were submitted as summary judgment evidence by the parties, and they appear at various places in the Clerk's Record as follows:

## B. Default & Initial Demands on the Guarantors

It is undisputed that NIP failed to pay its indebtedness to Frost Bank before it became a debtor in bankruptcy. (C.R. 215). As a result, on, or about, October 22, 2012, the the bank made demand on Pollock, Ling, Prentice, and Spaziano for payment of $712,554.68. (C.R. 215, 240–47).

## C. Settlement with Bruce Ling & Other Payments to Frost Bank

On, or about, December 19, 2012, the Frost Bank and Ling entered into a settlement agreement where Ling paid the bank $358,684.32 in exchange for a full release of his personal liability. (C.R. 216, 481, 488–90). This payment was 50 percent of the indebtedness identified in Frost Bank's demands plus accrued interest through the time of the settlement agreement.

Between the time Frost Bank ultimately filed its lawsuit and the time it filed its motion for summary judgment, the bankruptcy trustee administering NIP's bankruptcy estate was able to pay Frost Bank $66,281.49 out of the assets on hand. (C.R. 216).

| Guaranty Agreement | Frost MSJ | | Appellants' Cross-MSJ | |
|---|---|---|---|---|
| | Motion | Response | Motion | Response |
| Prentice | C.R. 227–30 | C.R. 367–70 | C.R. 312–15 | C.R. 470–73 |
| Spaziano | 235–38 | 373–76 | 318–21 | 476–79 |
| Pollock | 231–34 | 388–91 | 333–36 | 491–94 |
| Ling | 223–26 | 379–82 | 324–27 | 482–85 |

## D. Frost Bank Files Suit Against the Remaining Guarantors

Despite having received approximately 50 percent of the indebtedness owed by NIP, Frost Bank filed suit to collect additional monies from the remaining three guarantors—Prentice, Spaziano, and Pollock. (C.R. 3–8).

On March 19, 2014, Prentice and Spaziano filed a motion for summary judgment. (C.R. 41–85). The Motion was heard by a Visiting Judge, the Honorable Charles Ramsay, and on May 18, 2014, he entered an Order denying the motion. (C.R. 197).

On April 20, 2015, Frost Bank filed its own motion for summary judgment on both traditional and no-evidence grounds. (C.R. 201–95). Prentice, Spaziano, and Pollock filed a response on June 15, 2015. (C.R. 454–99). A hearing was held June 22, 2015. (C.R. 502).

In conjunction with Frost Bank's motion for summary judgment, Prentice, Spaziano, and Pollock field a cross-motion for summary judgment on June 1, 2015. (C.R. 296–341). Frost Bank filed a timely response on June 12, 2015. (C.R. 346–453). The arguments Frost Bank raised in its motion for summary judgment were essentially the same arguments raised in its response to Appellant's cross-motion for summary judgment; likewise, the arguments raised in Appellant's cross-motion for summary judgment were essentially identical to the arguments made in response to Frost Bank's motion for summary judgment. Whether filed in the motion for summary

judgment, the cross-motion, or in any response, there were no objections to any summary judgment evidence, and none of the summary judgment evidence raised any issue of material fact. The parties agreed that the issue before the trial court merely involved the application of undisputed facts to the law.

The motion for summary judgment and the cross-motion for summary judgment were heard June 22, 2015. (C.R. 502). On June 24, 2015, the Judge Triana announced her ruling on the two motions and asked Frost Bank's counsel to draft a final summary judgment in conformity with her ruling. (C.R. 502).

On July 30, the Appellants again requested that the court make a ruling expressly denying Frost Bank's no-evidence motion for summary judgment.[2] (C.R. 503–06).

On August 5, 2015, the Court entered the final summary judgment. (C.R. 507–10; App. 1). A week later, Prentice, Spaziano, and Pollock filed their Notice of Appeal. (C.R. 512–17).

---

[2] This request for a ruling was made when Frost Bank would not agree to language in the proposed summary judgment that would deny the no-evidence portion of Frost Bank's motion.

## Summary of the Argument

The trial court heard a motion for summary judgment and a cross-motion for summary judgment. In its motion for summary judgment, Frost Bank urged the court to grant a summary judgment on its sole cause of action for breach of a guaranty agreement on both traditional and no-evidence grounds. In their cross-motion for summary judgment, the Appellants urged the court to deny Frost Bank's claims due to latent ambiguities in the guaranty agreements.

While not specifying the grounds for granting the summary judgment, the trial court should most certainly have denied the no-evidence motion for summary judgment because it amounted to an improper shifting of the burden of proof to the Appellants. Guarantors never have the burden of proof on a cause of action for breach of a guaranty agreement. The only way Frost Bank could have properly moved for a no-evidence summary judgment would be to do so on an affirmative defense, but this was not done.

Under well-settled Texas law, guaranty agreements are construed in favor of the guarantor. When the guaranty agreement is unambiguous, the Court must interpret the agreement as a matter of law using established principles of contract construction. When a guaranty agreement contains patent or latent ambiguities, no parol evidence can be used to determine

the parties' intent unless those ambiguities are resolved in the guarantors' favor.

When read together, the guaranty agreements, which were executed at the same time and involve the same subject matter, contain a patent ambiguity. In each individual guaranty agreement, Bruce Ling, Miles Prentice, Richard Spaziano, and William Pollock agreed to guarantee half of the indebtedness National Insurance Partners owed to Frost Bank. The guaranty agreements stated:

> In all cases where there is more than one . . . Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so requires.

Applying that clause to the guaranty agreements, this literally means:

> [*Guarantors*] absolutely and unconditionally guarantee full and punctual payment and satisfaction of [*Guarantors'*] *Share of the Indebtedness* of Borrower to Lender. . . .

> The words "[*Guarantors'*] *Share of the Indebtedness*" . . . mean 50.000% of all of the principal amount, interest thereon to the extent not prohibited by law, and all collection costs, expenses and Lender's reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals.

Given that guaranty agreements are strictly construed in favor of guarantors, the Court should reverse the summary judgment and render the judgment that the trial court should have entered. A remand would be futile as no amount of parol evidence of the parties' intent can salvage Frost

Bank's claims that it should recover from the four Guarantors any more than 50 percent of the indebtedness due from National Insurance Partners.

## Argument

The lower court erred in entering a summary judgment in favor of Frost Bank and in denying the cross-motion for summary judgment filed by the Appellants. The Court should review the granting of a summary judgment *de novo. E.g., Masterson v. Diocese of Northwest Texas*, 422 S.W.3d 594, 607 (Tex. 2013).

> As stated in *FM Properties Operating Co. v. City of Austin*:
>
> When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented. . . . The reviewing court should render the judgment that the trial court should have rendered. . . . When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious.
>
> 22 S.W.3d 868, 872 (Tex. 2000) (internal citations omitted).

Because the summary judgment does not state the grounds on which it was granted, the Appellants demonstrate herein that each ground alleged in the motion is insufficient to support the judgment. *See McCrea v. Cubilla Condo. Corp. N.V.*, 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Frost Bank alleged it was entitled to summary judgment on both traditional and no-evidence grounds. On its traditional motion for summary judgment, Frost Bank had to prove that it was entitled to a judgment because it could prove, as a matter of law, each and every element of its claim for breach of a guaranty agreement. As to the no-evidence portion of the motion for summary judgment, Frost Bank's arguments were meritless, and the trial court should have never considered them.

## I.

## The trial court erred in granting a no-evidence summary judgment on a claim in which Frost Bank had the burden of proof

The trial court erred by not sustaining Appellants' objection to a no-evidence motion for summary judgment and not otherwise denying summary judgment, where Frost Bank alleged:

> Frost hereby alleges that it is entitled to no-evidence summary judgment as to the liability of each of the Defendants to pay Frost their Guarantor's Share of the Indebtedness, pursuant to the terms of their respective Guaranty Agreement, until the principal, interest, and costs of collection occurred in regard to the underlying Note have been paid full, on the grounds that Defendants are unable to present more than a scintilla of evidence that Frost cannot establish all necessary elements of its claim to enforce the Guaranty Agreements.

(C.R. 212).

This is an improper use of a no-evidence motion for summary judgment. There is no conceivable way Frost Bank could be granted a summary

12

judgment on no-evidence grounds on its own cause of action where it had the burden of proof. *See* Tex. R. Civ. P. 166a(i) ("a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence . . . on which an adverse party would have the burden of proof at trial."); *see also* App. 6.

A no-evidence motion for summary is the equivalent of a pre-trial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). The filing of a no-evidence motion that complies with Rule 166a(i) shifts the burden to the non-movant to file more than a scintilla of evidence, showing there is a genuine issue of material fact as to the challenged elements of the non-movant's cause of action or affirmative defense that is being challenged. *See id*.

By moving for a no-evidence motion for summary judgment on its own cause of action, Frost Bank improperly shifted the burden of proof in the entire case to the Appellants. The Appellants should no more have had the burden of proof on the Frost Bank's case in a summary judgment proceeding than they would have at a trial on the merits.

## II.

### The trial court erred in granting a traditional summary judgment where latent ambiguities required strict construction in favor of the Guarantors

Latent ambiguities in the guaranty agreements, which are evident when the agreements are read together, are an absolute bar to Frost Bank obtaining a summary judgment. When a latent ambiguity exists, a fact issue exists. *See Sidelnik v. American States Ins. Co.*, 914 S.W.2d 689, 691–92 (Tex. App.—Austin 1996, writ denied) (in resolving patent ambiguities, parol evidence is admissible).

In deciding whether there is a disputed issue of material fact that precludes summary judgment, the Court should consider as true all evidence favorable to the nonmovant. *Limestone Products Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The Court must view the evidence in the light most favorable to the nonmovant and must indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *Limestone Prods.*, 71 S.W.3d at 311; *Nixon*, 690 S.W.2d at 549.

To establish liability under a guaranty agreement, the holder of the guaranty must prove:

1. The existence and ownership of the guaranty,

2. The performance of the terms of the underlying loan agreement by the holder,

3. The occurrence of the condition upon which liability is based, and

4. The guarantor's failure or refusal to perform the promise.

*E.g., Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 378 (Tex. App.—Dallas 2011, no pet.). If liability is proved, the amount of liability is measured by the principal's liability, unless the guaranty agreement expressly provides for greater or lesser liability. *Pham v. Mongiello*, 58 S.W.3d 284, 288 (Tex.App.—Austin 2001, pet. denied). In the present case, the Guarantors' liability was limited to 50 percent of the total indebtedness due to the bank. (C.R. 223–38).

Because the amount of liability is an essential element, to be entitled to a summary judgment, the Appellants only need to disprove a single element of Frost Bank's claims—in this case the amount of liability. *Walker v. Harris*, 924 S.W.2d 375, 378 (Tex. 1996); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991).

The determinative question involving the four, identical guaranty agreements is whether each guarantor personally guaranteed 50 percent of the total indebtedness, making all guarantors collectively liable for up to 200 percent of all indebtedness that might be due, or whether all guarantors are collectively liable for only 50 percent of the total indebtedness. If

the former is true, each Appellant in this case would be liable for $360,471.60 as set forth in the underlying summary judgment. (C.R. 508–09; *see also* App. 1). If the latter is true, the Appellants would be collectively liable for $356,277.34 of the indebtedness that was due on October 22, 2012, and since Ling previously paid the same amount to settle the Frost Bank's claim, the Appellants' liability should have been $0.

As shown herein, the latter scenario—where the Appellants should have no liability to Frost Bank—is the proper one because it is fundamental that ambiguities in guaranty agreements are strictly construed in favor of guarantors. *E.g.*, *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). This has been the fundamental principal of the law involving guaranty agreements in Texas since the mid-19th century. *Smith v. Montgomery*, 3 Tex. 199, 209 (1848);[3] *see also Hill Mercantile Co. v. Rotan Grocery Co.*, 127 S.W. 1080, 1082 (Tex.Civ.App.—Austin 1910, writ dism'd) ("It is a well-settled rule of law that contracts of guaranty and suretyship are to be strictly construed, and all reasonable doubts resolved in favor of the guarantor or surety.").

---

[3] Justice Wheeler wrote, "It is a well settled rule, applicable to this class of cases, that the liability of a guarantor or surety cannot be extended by implication, or otherwise, beyond the actual terms of his engagement. It does not matter that a proposed alteration would even be for his benefit; for he has a right to stand upon the very terms of his agreement. The case must be brought strictly within the terms of the guaranty, when reasonably interpreted, or the guarantor will not be liable." *Smith v. Montgomery*, 3 Tex. 199, 209 (1848).

This is especially true where the ordinary rules of contract interpretation render the parties' obligations uncertain or ambiguous. *Principal Commercial Acceptance, L.L.C. v. Buchanan Fund V, L.L.C.*, No. 01-11-00782-CV, 2012 WL 6095236, at *8 (Tex.App.—Houston [1st Dist.] Dec. 6, 2012, pet. denied) (mem. op.) (*citing Coker*, 650 S.W.2d at 393 n. 1); *JMW Partners, L.P. v. Northstar Bank of Texas*, No. 2-09-167-CV, 2010 WL 2331399, at *4 (Tex. App.—Fort Worth Jun. 10, 2010, no pet.) (mem. op.) (*citing Coker*, 650 S.W.2d at 393 n. 1).

The interpretation of a guaranty agreement is a question of law. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000). Where multiple guarantees were executed at the same time, with the same purpose, they are construed together. *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). In construing guaranty agreements, the primary concern is to ascertain the intent of the parties. *Coker*, 650 S.W.2d at 393. The inquiry into the parties' intent must begin with the express language of the contract. *Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 807 (Tex. 2009). The entire document should be considered, each part with every other part so that the effect and meaning of one part on any other part may be determined. *Heritage Res. Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

## A. Unambiguous language in the Guaranty Agreements must be interpreted by its plan language as a matter of law

The language of the applicable clauses of the guaranty agreements is quoted on Page 5 of this Brief, and copies of the guaranty agreements are behind Tabs 2 through 5 of the Appendix. One of the key paragraphs of the guaranty agreements—labeled "Interpretation"—states:

> In all cases where there is more than one . . . Guarantor, *then all words used* in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so requires.

> (C.R. 225, 229, 233, 237) (emphasis added).

Applying this provision to the definition of the guarantors' liability, the plain language means that, collectively, the Appellants should not be liable for more than 50 percent of the total indebtedness due to the bank:

> [*Guarantors*] absolutely and unconditionally guarantee full and punctual payment and satisfaction of [*Guarantors'*] *Share of the Indebtedness* of Borrower to Lender. . . .

> The words "[*Guarantors'*] *Share of the Indebtedness*" . . . mean 50.000% of all of the principal amount, interest thereon to the extent not prohibited by law, and all collection costs, expenses and Lender's reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals.

> (C.R. 223, 227, 231, 235) (emphasis added, bracketed words reflecting the presence of multiple guarantors per clause regarding "interpretation").

Looking at the plan language of the guaranty agreements, *Guarantors' Share of the Indebtedness* refers to all of the guarantors, collectively. The four

documents should be considered as a single guaranty contract. "Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another." *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999) (citing *Board of Ins. Comm'rs v. Great S. Life Ins. Co.*, 239 S.W.2d 803, 809 (Tex. 1951)).

The plain language of the guaranty agreements should be the end of the Court's inquiry. This is because, as shown below, if the Court finds that the language is ambiguous, any such ambiguities must be resolved in the guarantors' favor.

## B. Latent ambiguities arising from the reading of the Guaranty Agreements together require construction in the Guarantors' favor

An ambiguity in a contract may be patent or latent. *National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). A patent ambiguity is apparent on the face of the contract, but a latent ambiguity only becomes apparent when a facially unambiguous contract is applied under the circumstances. *Id.* The present case is on where a single guaranty agreement becomes ambiguous when interpreting the meaning of *Guarantors' Share of the Indebtedness* in light of four, identical guaranty agreements guaranteeing payment of the same debt.

The fundamental question is whether *Guarantors' Share of the Indebtedness* means 50 percent of the entire indebtedness owed by NIP owned by the four guarantors collectively, or whether each individual guarantor is individually liable for 50 percent of the indebtedness, making the four guarantors mathematically liable for up to 200 percent of the indebtedness.

No reported decision in Texas has addressed the fundamental question presented in this case. However, the issue was examined in a federal district court in Tennessee, in a diversity case involving Florida law. *Whitney Nat'l Bank v. Labry*, No. 09-cv-02518, 2011 WL 1211606 (W.D. Tenn. Mar. 29, 2011) (not designated for publication). As in Texas, guaranty agreements governed by Florida law are strictly construed in favor of guarantors. *Scott v. City of Tampa*, 30 So.2d 300, 302 (Fla. 1947), *cert. denied*, 332 U.S. 790 (1947); *see also Bromlow v. Pyne Corp.*, 490 So.2d 1027, 1029 (Fla.Dist.Ct.App. 1986) (guarantor should only be held to strict terms of his guaranty).

As in the present case, each promissory note in *Labry* was guaranteed by four identical guarantees. *Labry*, 2011 WL 1211606 at *3. The language of the guaranty agreement, addressing multiple guarantors, in *Labry* was also similar to that in the present case as shown below:

*This space intentionally left blank*

20

| *Labry* | Present Case |
|---|---|
| If this Guaranty is executed by more than one person, each person is bound by all of the provisions of this Guaranty and is jointly and severally liable for the payment in full of the Obligations up to the full amount of this Guaranty as if such person was the only person executing this Guaranty. | In all cases where there is more than one . . . Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so requires. |
| *Labry*, 2011 WL 1211606 at *7–*8. | (C.R. 225, 229, 233, 237; *see also* App. 2–5). |

Both *Labry* and the present case are similar because none of the contractual provisions called for multiplying the amount the guarantors would be collectively liable for just because there were multiple guarantors. *Labry* found the argument that the guarantors were collectively responsible for paying multiple guarantees to be untenable. *Labry*, 2011 WL 1211606 at *11. This was based upon an examination of the plain language of the identical guaranty agreements. *See id*. at *9–*10.

Moreover, in determining the context of the scope of the "interpretation" clause dealing with multiple guaranty agreements, where the plural form of singular words is used "where the context and construction so requires," the Court should not just choose an interpretation the paragraph defining *guarantors' share of the indebtedness* must always be defined in the singular, even when multiple guaranty agreements exist.

21

## C. The Court must resolve ambiguities in the Guaranty Agreements in favor of the Guarantors

Even if the Court finds that the ambiguities exist that require determining the parties' intent so that the meaning of the guaranty agreements may be construed—in the guarantor's favor, of course—the Court can arrive at no other conclusion that the guarantee agreements cannot be multiplied in order to allow the Frost Bank to recover more than 50 percent of the indebtedness from the Appellants. *See e.g.*, *Coker*, 650 S.W.2d at 394; *Hill Mercantile Co.*, 127 S.W. at 1082 (guaranty agreements are strictly construed in the guarantor's favor).

An example of ambiguity arising with the execution multiple guaranty agreements is illustrated in *JMW Partners, L.P. v. Northstar Bank of Texas*. No. 2-09-167-CV, 2010 WL 2331399 (Tex.App.—Fort Worth Jun. 10, 2010, no pet.) (mem. op.). However, the ambiguity in *JMW Parners* involved whether guaranty agreements guaranteeing payment of a second loan extended to the indebtedness from an earlier loan with separate guaranty agreements. *Id*. at *1–*2. Nonetheless, *JMW Parners* is still instructive to the present case.

In *JMW Partners*, two guarantors, jointly and severally, guaranteed 100 percent of a $162,500 debt owed to Northstar Bank. *Id*. at *1. Two years later they guaranteed a second promissory note to Northstar Bank made by

22

the same debtor, but the second guarantee limited their liability to ⅓ of the outstanding indebtedness. *Id*. at *2. In the second guarantee, the *Guarantor's share of the indebtedness* was defined as:

> The words "Guarantor's Share of the Indebtedness" as used in this Guaranty mean 33.330% of the principal amount of the Indebtedness that is outstanding from time to time and at any one or more times. 'Guarantor's Share of the Indebtedness' also includes all accrued unpaid interest on the Indebtedness and all collection costs, expenses, and Lender's reasonable attorneys' fees. . . ."
>
> *Id*.

The Court found that neither guaranty agreement by itself was ambiguous. Rather ambiguity was found to exist, warranting a remand to the trial court, because the Court was unable to determine whether the parties intended the second guaranty agreement to apply to the original indebtedness. *Id*. at *7.

Most importantly, the definition of *Guarantor's share of indebtedness* was substantially identical to the same definition in this case:

*This space intentionally left blank*

| *JMW Partners* | Present Case |
|---|---|
| The words "Guarantor's Share of the Indebtedness" . . . mean 33.330% of the principal amount of the Indebtedness that is outstanding from time to time and at any one or more times. 'Guarantor's Share of the Indebtedness' also includes all accrued unpaid interest on the Indebtedness and all collection costs, expenses, and Lender's reasonable attorneys' fees. . . . | The words "Guarantor's Share of the Indebtedness" . . . mean 50.000% of all of the principal amount, interest thereon to the extent not prohibited by law, and all collection costs, expenses and Lender's reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals. . . . |
| *JMW Partners*, 2010 WL 2331399 at *2. | (C.R. 223, 227, 231, 235; *see also* App. 2–5). |

The Court in *JMW Partners*, did not find its substantially similar definition of *guarantor's share of indebtedness* to allow the multiplication of the guarantors' individual liability beyond ⅓ of the indebtedness. *See id*. at *7. The interpretation of the second guaranty agreement in *JMW Partners* was based upon an examination of the plain language. While it is unclear whether the the guaranty agreements in *JMW Partners* had the same "interpretation" clause as in the present case, there was no attempt to make the guarantors liable for more than ⅓ of the indebtedness. *Id*. at *7.

Accordingly, the lower court erred when it did not limit guarantors' collective liability to 50 percent of the indebtedness due to Frost Bank.

**III.**

## The trial court erred in denying Appellants' Cross-Motion for Summary Judgment

Just as the lower court erred in granting Frost Bank's motion for summary judgment, the same factors set forth in Section II, above, demonstrate that the lower court erred when it denied the Appellants' cross-motion for summary judgment. Accordingly, the this Court should reverse the summary judgment and render a new judgment holding that Frost Bank should take nothing by way of its claims against the Appellants. *See FM Properties Operating Co.*, 22 S.W.3d at 872.

No amount of fact finding by the lower court can result in the reformation of the guaranty agreements in this case to allow Frost Bank to recover more than 50 percent of the indebtedness from the four guarantors.

## Conclusion & Prayer

The latent ambiguity created in the four guaranty agreements must be resolved in the Appellants' favor. The definition of *guarantor's share of the indebtedness* should not have separate meanings for when there is a single guaranty agreement versus multiple guaranty agreements.

Being that there are no material facts in dispute, the Court may properly reverse and render a judgment on the grounds raised in the cross-motion for summary judgment.

WHEREFORE, for these reasons, Appellants, Eugene Miles Prentice, Richard M. Spaziano, and Carl William Pollock respectfully request that the Court reverse the summary judgment entered against them and render a judgment ordering Frost Bank to take nothing.

Respectfully Submitted,

PENDERGRAFT & SIMON, L.L.P.
2777 Allen Parkway, Suite 800
Houston, TX 77019
Tel. 713-528-8555
Fax. 713-868-1267

/s/ *William P. Haddock*
By: Robert L. Pendergraft
Texas Bar No. 15743500
rlp@pendergraftsimon.com
William P. Haddock
Texas Bar No. 00793875
whaddock@pendergraftsimon.com

*Counsel for Eugene Miles Prencitce &*
*Richard M. Spaziano*


/s/ *Carl William Pollock*[*with permission by WPH]
Carl William Pollock
1200 Barton Creek Blvd. #3
Austin, TX 78735
Tel. 512-656-6374
bpollock@healthcarerecoveryadvisors.com

*Appellant, pro se*

# Certificate of Compliance

1. This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i) because it contains 5,411 words, excluding those parts exempted by Tex. R. App. P. 9.4(i)(1).

2. This brief complies with the form and typeface requirements of TEX. R. APP. P. 9.4, using the Palatino, Helvetica Neue, and Optima typefaces in 14-point or larger for body text and 12-point for footnotes.

/s/ *William P. Haddock*
William P. Haddock


# Certificate of Service

I hereby certify that a true and correct copy of the foregoing Appellant's Brief has been served on the following counsel/parties of record via e-service, in accordance with the Tex. R. App. P. 9.5 and local rules for electronic filing on the 21st day of December 2015:

Kendall D. Hamilton
Law Office of Ken Hamilton
900 RR 620 South
Suite C101#164
Austin, TX 78734
*Counsel for Frost Bank*

Carl William Pollock
1200 Barton Creek Blvd. #3
Austin, TX 78735
bpollock@healthcarerecoveryadvisors.com
(by agreement)
*Appellant, pro se*

/s/ *William P. Haddock*
William P. Haddock

# Appendix

| Description of Document | Tab No. |
|---|---|

Order and Final Summary Judgment ................................................................. 1

Commercial Guaranty Agreements:

   • Eugene Miles Prentice ........................................................................ 2

   • Richard M. Spaziano .......................................................................... 3

   • Carl William Pollock .......................................................................... 4

   • Bruce W. Ling .................................................................................... 5

Tex. R. Civ. P. 166a ......................................................................................... 6

Tab 1

Filed in The District Court
of Travis County, Texas

AUG - 5 2015

At_____ 4:53 p.m.

Velva L. Price, District Clerk

NO. D-1-GN-13-000711

| | | |
|---|---|---|
| **FROST BANK,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **OF TRAVIS COUNTY, TEXAS** |
| **CARL WILLIAM POLLOCK,** | § | |
| **EUGENE MILES PRENTICE, and** | § | |
| **RICHARD M. SPAZIANO,** | § | |
| *Defendants* | § | **126th JUDICIAL DISTRICT** |

## ORDER AND FINAL SUMMARY JUDGMENT

On June 22, 2015, came on to be heard Plaintiff's Motion for Traditional and No-Evidence Summary Judgment ("Plaintiff's Motion"), Defendants, Eugene Miles Prentice's and Richard M. Spaziano's Cross-Motion for Summary Judgment and Defendant, Carl William Pollock's Motion for Summary Judgment (collectively, "Defendants' Motions"). The Court has considered Plaintiff's Motion and Defendants' Motions, the responses to the respective Motions filed by the parties, the admissible summary judgment evidence, the pleadings on file and the applicable law.

The Court finds that Plaintiff's Motion should be GRANTED because there is no genuine issue of material fact and Plaintiff is entitled to a judgment as a matter of law and that Defendants' Motions should be DENIED.

It is therefore, ORDERED, ADJUDGED and DECREED that Plaintiff's Motion is hereby GRANTED and Defendants' Motions are hereby DENIED.

It is further, ORDERED, ADJUDGED and DECREED that Plaintiff, FROST BANK, have and recover judgment against Defendants as follows:



004152767

1



507

1.      Against Defendant CARL WILLIAM POLLOCK, the sum of **$360,471.60**, which sum includes "Guarantor's Share of the Indebtedness" as described in Plaintiff's Motion of $356,277.34 and 50% of accrued pre-judgment interest, collection costs and reasonable attorney's fees through June 22, 2015 of $8,388.52 which equals $4,194.26, plus 50% of the interest accruing on the $360,471.60 calculated at the rate of eighteen percent (18.0%) per annum from the date of judgment until paid, plus 50% of reasonable attorney's fees of at least $7,500.00 for each successive appeal, and plus 50% of all costs of court incurred herein.

2.      Against Defendant EUGENE MILES PRENTICE, the sum of **$360,471.60**, which sum includes "Guarantor's Share of the Indebtedness" as described in Plaintiff's Motion of $356,277.34 and 50% of accrued pre-judgment interest, collection costs and reasonable attorney's fees through June 22, 2015 of $8,388.52 which equals $4,194.26, plus 50% of the interest accruing on the $360,471.60 calculated at the rate of eighteen percent (18.0%) per annum from the date of judgment until paid, plus 50% of reasonable attorney's fees of at least $7,500.00 for each successive appeal, and plus 50% of all costs of court incurred herein.

3.      Against Defendant RICHARD M. SPAZIANO, the sum of **$360,471.60**, which sum includes "Guarantor's Share of the Indebtedness" as described in Plaintiff's Motion of $356,277.34 and 50% of accrued pre-judgment interest, collection costs and reasonable attorney's fees through June 22, 2015 of $8,388.52 which equals $4,194.26, plus 50% of the interest accruing on the $360,471.60 calculated at the rate of eighteen percent (18.0%) per annum from the date of judgment until paid, plus 50% of reasonable attorney's fees of at least $7,500.00 for each successive appeal, and plus 50% of all costs of court incurred herein.

2

It is further ORDERED, ADJUDGED AND DECREED that once Plaintiff receives or collects sums from any one or more of the above Defendants equal to "Guarantor's Share of the Indebtedness" as described in Plaintiff's Motion of $356,277.34 plus 100% of accrued pre-judgment and post-judgment interest, collection costs and reasonable attorney's fees for trial and appeal since the date "Guarantor's Share of the Indebtedness" was determined also, as described in Plaintiff's Motion, then this judgment shall be deemed to be satisfied in full.

It is further ORDERED, ADJUDGED and DECREED that Plaintiff shall be allowed all writs and processes as are necessary for the enforcement and collection of this judgment. All relief not expressly granted is DENIED. This judgment disposes of all claims and all parties, is a FINAL JUDGMENT and is appealable.

SIGNED this __5__ day of August, 2015

_____
JUDGE GISELA D. TRIANA
200th DISTRICT COURT


APPROVED AS TO SUBSTANCE AND FORM AND ENTRY REQUESTED:

LAW OFFICE OF KEN HAMILTON
900 RR 620 South
Suite C101 #164
Austin, TX 78734
512/261-9938
512/261-9959 (fax)

By_____
KENDALL D. HAMILTON
STATE BAR NO. 08831900
hamiltonlaw@austin.rr.com
Attorneys for Plaintiff Frost Bank


3

509

APPROVED AS TO FORM, ONLY:

PENDERGRAFT & SIMON, LLP
2777 Allen Parkway, Suite 800
Houston, TX 77019
713/528-8555
713/868-12675857 (fax)

By _____
ROBERT L. PENDERGRAFT
STATE BAR NO. 15743500
rlp@pendergraftsimon.com
WILLIAM P. HADDOCK
STATE BAR NO. 00793875
whaddock@pendergraftsimon.com

Attorneys for Defendants, Eugene Miles Prentice
and Richard M. Spaziano

_____  WITH PERMISSION BY WPH
CARL WILLIAM POLLOCK, Pro Se

1200 Barton Creek Blvd #3
Austin, TX 78735
512/656-6374
bpollock@healthcarerecoveryadvisors.com

frost\nip\msj-frost\sj.final

4

510

Tab 2





[redacted]

# COMMERCIAL GUARANTY

9002 4140950

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** NATIONAL INSURANCE PARTNERS, INC. [redacted]
1608 MESA RIDGE LN
AUSTIN, TX 78755

**Lender:** THE FROST NATIONAL BANK
DOWNTOWN AUSTIN FINANCIAL CENTER
P.O. BOX 1600
SAN ANTONIO, TX 78296

**Guarantor:** EUGENE MILES PRENTICE [redacted]
34 W 95TH ST
NEW YORK, NY 10025 [redacted]

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Lender's reasonable attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**GUARANTOR'S SHARE OF THE INDEBTEDNESS.** The words "Guarantor's Share of the Indebtedness" as used in this Guaranty mean [illegible] of all the principal amount, interest thereon to the extent not prohibited by law, and all collection costs, expenses and Lender's reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals.

Lender shall determine Guarantor's Share of the Indebtedness when Lender makes demand on Guarantor. After a determination, Guarantor's Share of the Indebtedness will only be reduced by sums actually paid by Guarantor under this Guaranty, but will not be reduced by sums from any other source including, but not limited to, sums realized from any collateral securing the Indebtedness or this Guaranty, or payments by anyone other than Guarantor, or reductions by operation of law, judicial order or equitable principles. Lender has the sole and absolute discretion to determine how sums shall be applied among guaranties of the Indebtedness.

The above limitation on liability is not a restriction on the amount of the Note of Borrower to Lender either in the aggregate or at any one time.

**CONTINUING GUARANTY.** THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. This Guaranty covers a revolving line of credit and it is specifically anticipated that fluctuations will occur in the aggregate amount of the Indebtedness. Guarantor specifically acknowledges and agrees that fluctuations in the amount of the Indebtedness, even to zero dollars ($ 0.00), shall not constitute a termination of this Guaranty. Guarantor's liability under this Guaranty shall terminate only upon (A) termination in writing by Borrower and Lender of the line of credit, (B) payment of the Indebtedness in full in legal tender, and (C) payment in full in legal tender of all of Guarantor's other obligations under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening or otherwise affecting Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or

EXHIBIT

A-1

05-22-2007   02:46pm   From-FROST NATL AUSTIN                    T-700   P.003/008   F-342

## COMMERCIAL GUARANTY
### (Continued)

| Loan No: 9002 | Page 2 |
|---|---|

agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (E) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 34 of the Texas Business and Commerce Code. Guarantor also waives any and all rights of defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the indebtedness; (D) any right to claim discharge of the indebtedness on the basis of unjustified impairment of any collateral for the indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the indebtedness. If Lender so requests, any notice of credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty.

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Attorneys' Fees; Expenses. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses

471

06-22-2007 03:48pm Prom-FROST NATL AUSTIN T-780 P.804/808 F-342

## COMMERCIAL GUARANTY
(Continued)

Loan No: 9002        Page 3

include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of Texas.

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Guaranty occurred in BEXAR County, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of BEXAR County, State of Texas.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**WAIVER OF RIGHT TO TRIAL BY JURY.** THE UNDERSIGNED HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT TO ENFORCE THIS AGREEMENT, TO COLLECT DAMAGES FOR THE BREACH OF THIS AGREEMENT, OR WHICH IN ANY OTHER WAY ARISE OUT OF, ARE CONNECTED TO OR ARE RELATED TO THIS AGREEMENT OR THE SUBJECT MATTER OF THIS AGREEMENT. ANY SUCH ACTION SHALL BE TRIED BY THE JUDGE WITHOUT A JURY.

**FACSIMILE DOCUMENTS AND SIGNATURES.** For purposes of negotiating and finalizing this document, if this document is transmitted by facsimile machine ("fax"), it shall be treated for all purposes as an original document. Additionally, the signature of any party on this document transmitted by way of a fax machine shall be considered for all purposes as an original signature. Any such faxed document shall be considered to have the same binding legal effect as an original document. At the request of any party, any faxed document shall be re-executed by each signatory party in an original form.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code.

    **Borrower.** The word "Borrower" means NATIONAL INSURANCE PARTNERS, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

    **Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation EUGENE MILES PRENTICE, and in each case, any signer's successors and assigns.

    **Guarantor's Share of the Indebtedness.** The words "Guarantor's Share of the Indebtedness" mean Guarantor's indebtedness to Lender as more particularly described in this Guaranty.

    **Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

    **Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

    **Lender.** The word "Lender" means THE FROST NATIONAL BANK, its successors and assigns.

    **Note.** The word "Note" means the promissory note dated May 22, 2007, in the original principal amount of $1,000,000.00 from Borrower

05-22-2007 03:47pm Prom-FROST NATL AUSTIN T-700 P.006/009 F-342

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 9002          Page 4

to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 22, 2007.

GUARANTOR:

X _____
EUGENE MILES PRENTICE

Tab 3





# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 800 / 0010 | | 653 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: NATIONAL INSURANCE PARTNERS, INC.
1508 MESA RIDGE LN
AUSTIN, TX 78735

Lender: THE FROST NATIONAL BANK
DOWNTOWN AUSTIN FINANCIAL CENTER
P.O. BOX 1600
SAN ANTONIO, TX 78296

Guarantor: RICHARD M. SPAZIANO
70 CEDAR BAY DR
WARWICK , RI 02888

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Lender's reasonable attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**GUARANTOR'S SHARE OF THE INDEBTEDNESS.** The words "Guarantor's Share of the Indebtedness" as used in this Guaranty mean 50.000% of all the principal amount, interest thereon to the extent not prohibited by law, and all collection costs, expenses and Lender's reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals.

Lender shall determine Guarantor's Share of the Indebtedness when Lender makes demand on Guarantor. After a determination, Guarantor's Share of the Indebtedness will only be reduced by sums actually paid by Guarantor under this Guaranty, but will not be reduced by sums from any other source including, but not limited to, sums realized from any collateral securing the Indebtedness or this Guaranty, or payments by anyone other than Guarantor, or reductions by operation of law, judicial order or equitable principles. Lender has the sole and absolute discretion to determine how sums shall be applied among guaranties of the Indebtedness.

The above limitation on liability is not a restriction on the amount of the Note of Borrower to Lender either in the aggregate or at any one time.

**CONTINUING GUARANTY. THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.**

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. This Guaranty covers a revolving line of credit and it is specifically anticipated that fluctuations will occur in the aggregate amount of the Indebtedness. Guarantor specifically acknowledges and agrees that fluctuations in the amount of the Indebtedness, even to zero dollars ($ 0.00), shall not constitute a termination of this Guaranty. Guarantor's liability under this Guaranty shall terminate only upon (A) termination in writing by Borrower and Lender of the line of credit, (B) payment of the Indebtedness in full in legal tender, and (C) payment in full in legal tender of all of Guarantor's other obligations under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening or otherwise affecting Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or

EXHIBIT

B-1

## COMMERCIAL GUARANTY

agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 34 of the Texas Business and Commerce Code. Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

> **Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

> **Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses

## COMMERCIAL GUARANTY
### (Continued)

include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of Texas.

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Guaranty occurred in BEXAR County, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of BEXAR County, State of Texas.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**WAIVER OF RIGHT TO TRIAL BY JURY.** THE UNDERSIGNED HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT TO ENFORCE THIS AGREEMENT, TO COLLECT DAMAGES FOR THE BREACH OF THIS AGREEMENT, OR WHICH IN ANY OTHER WAY ARISE OUT OF, ARE CONNECTED TO OR ARE RELATED TO THIS AGREEMENT OR THE SUBJECT MATTER OF THIS AGREEMENT. ANY SUCH ACTION SHALL BE TRIED BY THE JUDGE WITHOUT A JURY.

**FACSIMILE DOCUMENTS AND SIGNATURES.** For purposes of negotiating and finalizing this document, if this document is transmitted by facsimile machine ("fax"), it shall be treated for all purposes as an original document. Additionally, the signature of any party on this document transmitted by way of a fax machine shall be considered for all purposes as an original signature. Any such faxed document shall be considered to have the same binding legal effect as an original document. At the request of any party, any faxed document shall be re-executed by each signatory party in an original form.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means NATIONAL INSURANCE PARTNERS, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation RICHARD M. SPAZIANO, and in each case, any signer's successors and assigns.

**Guarantor's Share of the Indebtedness.** The words "Guarantor's Share of the Indebtedness" mean Guarantor's indebtedness to Lender as more particularly described in this Guaranty.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means THE FROST NATIONAL BANK, its successors and assigns.

**Note.** The word "Note" means the promissory note dated May 22, 2007, in the original principal amount of $1,000,000.00 from Borrower

## COMMERCIAL GUARANTY
Loan No: 9002                                    (Continued)                                    Page 4

to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 22, 2007.

GUARANTOR:

X _____
RICHARD M. SPAZIANO

LASER PRO Lending, Ver. 5.37.10.003 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - TX M:\SOFTWARE\CFI\LASERPRO\CFI\LPL\E20.FC TR-54115 PR-39

Tab 4





# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 500 / 0010 | 4140950 | 653 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** NATIONAL INSURANCE PARTNERS, INC. [redacted]
[redacted]
1508 MESA RIDGE LN
AUSTIN, TX 78735

**Lender:** THE FROST NATIONAL BANK
DOWNTOWN AUSTIN FINANCIAL CENTER
P.O. BOX 1600
SAN ANTONIO, TX 78296

**Guarantor:** CARL WILLIAM POLLOCK [redacted]
1508 MESA RIDGE LN
AUSTIN, TX 78735 [redacted]

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Lender's reasonable attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**GUARANTOR'S SHARE OF THE INDEBTEDNESS.** The words "Guarantor's Share of the Indebtedness" as used in this Guaranty mean 50.000% of all the principal amount, interest thereon to the extent not prohibited by law, and all collection costs, expenses and Lender's reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals.

Lender shall determine Guarantor's Share of the Indebtedness when Lender makes demand on Guarantor. After a determination, Guarantor's Share of the Indebtedness will only be reduced by sums actually paid by Guarantor under this Guaranty, but will not be reduced by sums from any other source including, but not limited to, sums realized from any collateral securing the Indebtedness or this Guaranty, or payments by anyone other than Guarantor, or reductions by operation of law, judicial order or equitable principles. Lender has the sole and absolute discretion to determine how sums shall be applied among guaranties of the Indebtedness.

The above limitation on liability is not a restriction on the amount of the Note of Borrower to Lender either in the aggregate or at any one time.

**CONTINUING GUARANTY.** THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **This Guaranty covers a revolving line of credit and it is specifically anticipated that fluctuations will occur in the aggregate amount of the Indebtedness. Guarantor specifically acknowledges and agrees that fluctuations in the amount of the Indebtedness, even to zero dollars ($ 0.00), shall not constitute a termination of this Guaranty. Guarantor's liability under this Guaranty shall terminate only upon (A) termination in writing by Borrower and Lender of the line of credit, (B) payment of the Indebtedness in full in legal tender, and (C) payment in full in legal tender of all of Guarantor's other obligations under this Guaranty.**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening or otherwise affecting Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or

EXHIBIT
D

## COMMERCIAL GUARANTY
### (Continued)

agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 34 of the Texas Business and Commerce Code. Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses

# COMMERCIAL GUARANTY
## (Continued)

include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of Texas.

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Guaranty occurred in BEXAR County, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of BEXAR County, State of Texas.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**WAIVER OF RIGHT TO TRIAL BY JURY. THE UNDERSIGNED HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT TO ENFORCE THIS AGREEMENT, TO COLLECT DAMAGES FOR THE BREACH OF THIS AGREEMENT, OR WHICH IN ANY OTHER WAY ARISE OUT OF, ARE CONNECTED TO OR ARE RELATED TO THIS AGREEMENT OR THE SUBJECT MATTER OF THIS AGREEMENT. ANY SUCH ACTION SHALL BE TRIED BY THE JUDGE WITHOUT A JURY.**

**FACSIMILE DOCUMENTS AND SIGNATURES.** For purposes of negotiating and finalizing this document, if this document is transmitted by facsimile machine ("fax"), it shall be treated for all purposes as an original document. Additionally, the signature of any party on this document transmitted by way of a fax machine shall be considered for all purposes as an original signature. Any such faxed document shall be considered to have the same binding legal effect as an original document. At the request of any party, any faxed document shall be re-executed by each signatory party in an original form.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means NATIONAL INSURANCE PARTNERS, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation CARL WILLIAM POLLOCK, and in each case, any signer's successors and assigns.

**Guarantor's Share of the Indebtedness.** The words "Guarantor's Share of the Indebtedness" mean Guarantor's indebtedness to Lender as more particularly described in this Guaranty.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means THE FROST NATIONAL BANK, its successors and assigns.

**Note.** The word "Note" means the promissory note dated May 22, 2007, in the original principal amount of $1,000,000.00 from Borrower

## COMMERCIAL GUARANTY

to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 22, 2007.

GUARANTOR:

X _Carl William Pollock_

**CARL WILLIAM POLLOCK**

LASER PRO Lending, Ver. 6.32.10.003 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - TX M:\SOFTWARE\LASERPRO\CFI\LPL\E20.FC TR-34713 PR-30

Tab 5



4140950

kad



# COMMERCIAL GUARANTY

9 VM     4140950

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | NATIONAL INSURANCE PARTNERS, INC. (TIN: 20-9259587) 1608 MESA RIDGE LN AUSTIN, TX 78735 | Lender: | THE FROST NATIONAL BANK DOWNTOWN AUSTIN FINANCIAL CENTER P.O. BOX 1600 SAN ANTONIO, TX 78296 |
|---|---|---|---|
| Guarantor: | BRUCE W. LING (SSN: 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) 150 COLUMBUS AVE APT 25D NEW YORK, NY 10023     4157681 | | |

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Lender's reasonable attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**GUARANTOR'S SHARE OF THE INDEBTEDNESS.** The words "Guarantor's Share of the Indebtedness" as used in this Guaranty mean 50.000% of all the principal amount, interest thereon to the extent not prohibited by law, and all collection costs, expenses and Lender's reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals.

Lender shall determine Guarantor's Share of the Indebtedness when Lender makes demand on Guarantor. After a determination, Guarantor's Share of the Indebtedness will only be reduced by sums actually paid by Guarantor under this Guaranty, but will not be reduced by sums from any other source including, but not limited to, sums realized from any collateral securing the Indebtedness or this Guaranty, or payments by anyone other than Guarantor, or reductions by operation of law, judicial order or equitable principles. Lender has the sole and absolute discretion to determine how sums shall be applied among guaranties of the Indebtedness.

The above limitation on liability is not a restriction on the amount of the Note or Borrower to Lender either in the aggregate or at any one time.

**CONTINUING GUARANTY. THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.**

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. This Guaranty covers a revolving line of credit and it is specifically anticipated that fluctuations will occur in the aggregate amount of the Indebtedness. Guarantor specifically acknowledges and agrees that fluctuations in the amount of the Indebtedness, even to zero dollars ($ 0.00), shall not constitute a termination of this Guaranty. Guarantor's liability under this Guaranty shall terminate only upon (A) termination in writing by Borrower and Lender of the line of credit, (B) payment of the Indebtedness in full in legal tender, and (C) payment in full in legal tender of all of Guarantor's other obligations under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening or otherwise affecting Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or

EXHIBIT
C-1

# COMMERCIAL GUARANTY
### (Continued)

agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occured which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 34 of the Texas Business and Commerce Code. Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

    **Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

    **Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses

## COMMERCIAL GUARANTY
**Loan No: 9002**                    **(Continued)**                    **Page 3**

include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of Texas.

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Guaranty occurred in BEXAR County, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of BEXAR County, State of Texas.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**WAIVER OF RIGHT TO TRIAL BY JURY.** THE UNDERSIGNED HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT TO ENFORCE THIS AGREEMENT, TO COLLECT DAMAGES FOR THE BREACH OF THIS AGREEMENT, OR WHICH IN ANY OTHER WAY ARISE OUT OF, ARE CONNECTED TO OR ARE RELATED TO THIS AGREEMENT OR THE SUBJECT MATTER OF THIS AGREEMENT. ANY SUCH ACTION SHALL BE TRIED BY THE JUDGE WITHOUT A JURY.

**FACSIMILE DOCUMENTS AND SIGNATURES.** For purposes of negotiating and finalizing this document, if this document is transmitted by facsimile machine ("fax"), it shall be treated for all purposes as an original document. Additionally, the signature of any party on this document transmitted by way of a fax machine shall be considered for all purposes as an original signature. Any such faxed document shall be considered to have the same binding legal effect as an original document. At the request of any party, any faxed document shall be re-executed by each signatory party in an original form.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means NATIONAL INSURANCE PARTNERS, INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation BRUCE W. LING, and in each case, any signer's successors and assigns.

**Guarantor's Share of the Indebtedness.** The words "Guarantor's Share of the Indebtedness" mean Guarantor's indebtedness to Lender as more particularly described in this Guaranty.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means THE FROST NATIONAL BANK, its successors and assigns.

**Note.** The word "Note" means the promissory note dated May 22, 2007, in the original principal amount of $1,000,000.00 from Borrower

**COMMERCIAL GUARANTY**
(Continued)

Loan No: 9002           Page 4

to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 22, 2007.

GUARANTOR:

X _____
BRUCE W. LING

Tab 6

Vernon's Texas Rules Annotated
 Texas Rules of Civil Procedure
  Part II. Rules of Practice in District and County Courts
   Section 8. Pre-Trial Procedure (Refs & Annos)

TX Rules of Civil Procedure, Rule 166a

Rule 166a. Summary Judgment

Currentness

**(a) For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the adverse party has appeared or answered, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to amount of damages.

**(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

**(c) Motion and Proceedings Thereon.** The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response. No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

**(d) Appendices, References and Other Use of Discovery Not Otherwise on File.** Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs: (i) at least twenty-one days before the hearing if such proofs are to be used to support the summary judgment; or (ii) at least seven days before the hearing if such proofs are to be used to oppose the summary judgment.

**(e) Case not Fully Adjudicated on Motion.** If summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the judge may at the hearing examine the pleadings and the evidence on file, interrogate counsel,

ascertain what material fact issues exist and make an order specifying the facts that are established as a matter of law, and directing such further proceedings in the action as are just.

**(f) Form of Affidavits; Further Testimony.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.

**(g) When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**(h) Affidavits Made in Bad Faith.** Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

**(i) No-Evidence Motion.** After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

**Credits**

Oct. 12, 1949, eff. March 1, 1950. Amended by orders of Oct. 1, 1951, eff. March 1, 1952; July 20, 1966, eff. Jan. 1, 1967; July 21, 1970, eff. Jan. 1, 1971; July 11, 1977, eff. Jan. 1, 1978; June 10, 1980, eff. Jan. 1, 1981; Dec. 5, 1983, eff. April 1, 1984; July 15, 1987, eff. Jan. 1, 1988; April 24, 1990, eff. Sept. 1, 1990; Aug. 15, 1997, eff. Sept. 1, 1997.

Vernon's Ann. Texas Rules Civ. Proc., Rule 166a, TX R RCP Rule 166a

Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.